UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, a nonprofit corporation, 1333 N. Oracle Rd. Tucson, AZ 85705  **Plaintiff,** v.  **H. DALE HALL,** Director, U.S. Fish and Wildlife Service, 1849 C Street, N.W. Room 3256, MailStop 3238 MIB Washington, D.C. 20240-0001  **DIRK KEMPTHORNE**, United States Secretary of the Interior 1849 C Street, N.W. Washington, D.C.  20240  **Defendants.** | **Case No:** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1.     In this civil action for declaratory and injunctive relief, Plaintiff CENTER FOR BIOLOGICAL DIVERSITY challenges the failure of Defendants H. DALE HALL, Director, U.S. Fish and Wildlife Service and  DIRK KEMPTHORNE, United States Secretary of the Interior (collectively "the Secretary") to comply with the non-discretionary provisions of the Endangered Species Act, as amended, 16 U.S.C. §§ 1531-1544 ("ESA").  The Secretary has failed to take action to protect ten penguin species under the ESA within the timeframe set forth by the ESA.  16 U.S.C. § 1533(b). Plaintiffs request this Court to order the Secretary to comply with the ESA's mandatory,

non-discretionary timeline for processing citizen petitions to list species and make a decision on Plaintiff's penguin petition by a date certain.

2.  Many of the world's penguin species are imperiled by a combination of threats including global warming, ocean acidification, direct harm from and competition for prey with industrial fisheries, oil spills, and in some cases direct harvest. On this basis, on November 28, 2006 Plaintiff submitted a 125-page scientific Petition to list twelve of the world's penguin species as threatened or endangered pursuant to Section 4 of the ESA. The 12 species included in the Petition were the Emperor Penguin, Southern Rockhopper Penguin, Northern Rockhopper Penguin, Fiordland Crested Penguin, Snares Crested Penguin, Erect-crested Penguin, Macaroni Penguin, Royal Penguin, White-flippered Penguin, Yellow-eyed Penguin, African Penguin, and Humboldt Penguin.

3.  The Secretary received the Petition on November 29, 2006. Within 90 days of receipt of the Petition, the ESA required the Secretary to determine, to the maximum extent practicable, whether the Petition presented substantial information indicating that listing "may be warranted," and if so, to initiate a status review of the species. 15 U.S.C. § 1533(b)(3)(A). If the Secretary makes a positive 90-day finding, the ESA requires him to determine, within twelve months of the Petition being filed, whether the requested action (here, listing the penguin species) is "warranted" and, if so, to publish a proposed rule listing the species. 15 U.S.C. § 1533(b)(3)(B).

4.  On July 11, 2007, the Secretary published in the Federal Register a positive 90-day finding for ten of the petitioned penguin species. 72 Fed. Reg. 37695-37697 (Notice of 90-Day Finding on a Petition to List 12 Penguin Species as Threatened or Endangered under the Endangered Species Act) (July 11, 2007). In the 90-day finding, the Secretary found that the Petition presented substantial information showing that listing of the ten penguin species may be warranted under the Endangered Species Act, initiated a status review for these species, and solicited public comment for a period

of 60 days. Id. The positive 90-day finding was for the Emperor Penguin, Southern Rockhopper Penguin, Northern Rockhopper Penguin, Fiordland Crested Penguin, Erect-crested Penguin, Macaroni Penguin, White-flippered Penguin, Yellow-eyed Penguin, African Penguin, and Humboldt Penguin (hereinafter "ten penguin species"). Id. The Secretary made a negative 90-day finding for the Royal and Snares Crested Penguins. Id.

5.     A 12-month finding for the ten penguin species for which the Secretary made a positive 90-day finding was due on November 29, 2006. The Secretary failed to issue the 12-month finding for these species by this date, and has still not done so. The ten penguin species will not receive the protections they need and deserve under the ESA until the Secretary makes all of the required findings and completes the ESA listing process.

## II. JURISDICTION AND VENUE

6.     This court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) (actions under the ESA); 16 U.S.C. § 1540(g) (ESA citizen suit provision); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1346 (action against the United States); 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty); and 28 U.S.C. § 2201-02 (power to issue declaratory judgments in cases of actual controversy).

7.     Plaintiff provided the Secretary with at least sixty days written notice of the ESA violations alleged herein as required by 16 U.S.C. § 1540(g)(2)(c).

8.     Plaintiff requested that the Secretary satisfy its statutory obligations to issue a 12-month finding for the ten penguin species. The Secretary has failed to remedy the alleged violation, and therefore an actual controversy exists within the meaning of 28 U.S.C. § 2201(a).

9.     Venue is proper in this court because Defendants reside in this district. 28 U.S.C. § 1391(e).

## III. PARTIES

10.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a nonprofit corporation that works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction. The Center is dedicated to the preservation, protection, and restoration of biodiversity and ecosystems throughout the world. Center members, staff, and board members include people with aesthetic, professional, recreational, spiritual, educational, scientific, moral, and conservation interests in the penguins that are the subject of this Complaint.

11.     Center members travel to and recreate in the habitats of, and observe or attempt to observe, the penguins that are the subject of this Complaint. The Center's members have concrete plans to continue to travel to and recreate in the habitats of, and observe or attempt to observe, these species. Moreover, to ensure that these species continue to exist in their natural habitats, the Center, its members, staff, and board have worked and plan to continue to work to protect and preserve the habitats necessary for survival and recovery of these species. Therefore, not only do the Center's members, staff, and/or board have strong aesthetic, recreational, moral and spiritual interests in these species, they also have strong professional, conservation, education, and scientific interests in them as well.

12.     The Center has over 40,000 members, including those who have viewed, photographed, and otherwise appreciated the penguin species that are the subject of this Complaint, and who intend to enjoy the penguin species and their habitat in the future. The Center's members use the habitat of these species for wildlife observation, research, nature photography, aesthetic enjoyment, recreational, educational, and other activities.

13.     The Center's members derive substantial scientific, educational, recreational, and aesthetic benefits from these species' continued existence in the wild. The Center has a long-standing interest in conserving imperiled species, including diligent efforts to protect these penguin species and the habitat and climate upon which

they depend.   The Center brings this suit on its own behalf and on behalf of its adversely affected members, staff, and board.

14.    The Secretary's failure to issue the required 12-month finding for the ten penguin species that are the subject of this Complaint deprives the Center and its members of legally required protective measures to conserve and promote the recovery of these species.    The recreational, aesthetic, conservation, educational, and scientific interests of the Center, its members, and staff have been, are being, and unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by the Secretary's failure to act.    The interests of the Center's members and the organization are thus directly and adversely affected by the Secretary's unlawful actions.

15.    The ESA protections that the Secretary continues to withhold would provide the ten penguin species that are the subject of this Complaint significant benefits: greater enforcement measures to protect the species against illegal trade; more money for conservation efforts; the greater possibility of bilateral or multilateral agreements with foreign countries that encourage conservation of listed species; the requirement that federal agencies "insure" that their actions do not "jeopardize the continued existence of any endangered species or threatened species;" regulations that make it illegal for any person subject to the jurisdiction of the United States to "take," import or export, deliver, receive, carry, transport, or ship in interstate or foreign commerce in the course of commercial activity, or sell or offer for sale in interstate or foreign commerce any endangered wildlife species; and the greater recognition/increased public awareness that comes with being listed under the ESA.

16.    These increased conservation benefits that would result from the ESA listings that the Secretary continues to withhold would help the ten penguin species that are the subject of this Complaint counteract the various threats they face. As a result, the Center, its members, staff, and board could continue to observe and attempt to observe the species in their natural habitats; could continue professional, conservation, scientific,

and educational efforts on behalf of the species; and derive spiritual, aesthetic, recreation, professional and moral benefit from the continued existence of the species.

17.    The Center, its members, staff, and board also suffer procedural and informational injuries flowing from the Secretary's failure to comply with the ESA. The Secretary's failure to timely issue and publish 12-month findings regarding the ten penguin species that are the subject of this Complaint, deprives the Center, its members, staff, and board of information to which they are statutorily entitled. Because the ESA provides for public participation in the listing process, including a public comment period and public hearing, the failure of the Secretary to timely issue and publish 12-month findings regarding the ten penguin species that are the subject of this Complaint, prevents the Center, its members, staff, and board from participating in the listing process in the manner Congress intended. The Secretary's failure to comply with the ESA therefore also frustrates and harms procedural interests of the Center, its members, staff, and board.

18.    In sum, unless this Court grants the requested relief and orders the Secretary to promptly make and publish the legally required finding for the ten penguin species that are the subject of this Complaint, ESA benefits will not accrue for these species, statutorily required information will not be made available, required public participation procedures will not be initiated, and the aesthetic, recreational, educational, professional, scientific, spiritual, moral, and conservation interests of the Center, its members, its staff, and its board will continue to be adversely affected. The injuries to the Center, its members, and staff would be redressed by declaratory and injunctive relief compelling the Secretary to issue the required 12-month finding for the ten penguin species. The Center has no adequate remedy at law.

19.    Defendant DIRK KEMPTHORNE, United States Secretary of the Interior, is the highest ranking official within the Department of Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the ESA with regard to the ten penguin species that are the subject of this Complaint, and for compliance with

all other federal laws applicable to the Department of the Interior. He is sued in his official capacity.

20.     Defendant H. DALE HALL, is Director of the United States Fish and Wildlife Service ("the Service"), the federal agency within the Department of Interior authorized and required by law to protect and manage the fish and wildlife, including enforcing the ESA. The Service has been delegated authority by the Secretary of Interior to implement the ESA for the ten penguin species that are the subject of this Complaint, including responsibility for making decisions and promulgating regulations, including proposed and final listing decisions and the processing of petitions for such listings. The Service has failed to publish a 12-month finding on the Petition to list the penguin species that are the subject of this Complaint under the ESA.

## IV. STATUTORY BACKGROUND

**The Endangered Species Act**

21.     The ESA is a federal statute enacted to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). The ESA "is the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Authority v. Hill, 437 U.S. 153, 180 (1978). The Supreme Court's review of the ESA's "language, history, and structure" convinced the Court "beyond a doubt" that "Congress intended endangered species to be afforded the highest of priorities." Id. at 174. As the Court found, "the plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." Id. at 184.

22.     To achieve these objectives, the Secretary is required to protect such imperiled species by listing them as either "threatened" or "endangered" if they are facing extinction due to any one, or any combination of, the following factors:

> (A)     the present or threatened destruction, modification,
>
>          or curtailment of its habitat or range;

(B) over-utilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

ESA § 4(a)(1), 16 U.S.C. § 1533(a)(1).

23.    A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." ESA § 3(6), 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." ESA § 3(20), 16 U.S.C. § 1532(20).

24.    A species receives mandatory substantive protections under the ESA if, and only if, it is formally listed as endangered or threatened. See 50 C.F.R. § 402.12(d). Thus, the listing process is the essential first step in the ESA's system of species protection and recovery.

25.    Any interested person can begin the listing process by filing a petition to list a species with the Secretary. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a)(2006).

26.    Upon receipt of a petition to list a species, the Secretary has 90 days to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1). This determination is known as a 90-day finding.

27.    If the Secretary makes a positive 90-day finding, he or she must promptly publish it in the Federal Register and commence a "status review" of the species. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A).

28.     After issuing a positive 90-day finding, the Secretary has 12 months from the date that it received the petition to make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action…is precluded by pending proposals to determine whether any species is an endangered species or a threatened species," and "expeditious progress is being made to add qualified species" to the list "in which case the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which such finding is based."   ESA § 4(b)(3)(B), 16 U.S.C. § 1533(b)(3)(B).

29.     When the Secretary finds that listing of a species is warranted, it must publish a proposed rule to list the species as endangered or threatened in the Federal Register.  ESA § 4(b)(5), 16 U.S.C. § 1533(b)(5).

30.     Within one year of the publication of a proposed rule to list a species, the Secretary must make a final decision on the proposal.  ESA § 4(b)(6)(A), 16 U.S.C. § 1533(b)(6)(A).

31.     ESA listing provides substantial benefits to foreign species such as the ten penguin species that are the subject of this Complaint.  Indeed, an entire section of the ESA is devoted to "International Cooperation."  ESA § 8; 16 U.S.C. § 1537.  Section 8(a) of the ESA explicitly authorizes the President to provide financial assistance for the development and management of programs in foreign countries that the Secretary determines to be necessary or useful for the conservation of species listed as endangered or threatened.  Id.  Section 8(a) also explicitly authorizes the President to place "terms and conditions as he deems appropriate" on any financial assistance in order to ensure it is used for conservation purposes.  Id.

32.    Moreover, Sections 8(b) and 8(c) of the ESA authorize the Secretary to encourage conservation programs for foreign endangered species, and to provide assistance for such programs in the form of personnel and the training of personnel. Id.

33.    ESA benefits extend well beyond Section 8. The ESA restricts import and export of endangered and threatened species from the United States as well as movement and sale in interstate or foreign commerce. ESA listing also provides greater public awareness for, and greater recognition of the status of the listed species which encourages and often results in conservation actions by foreign, federal, state, and private agencies and groups, and individuals. In other words, ESA listing puts pressure on foreign governments to use any power that they have to conserve species and their ecosystems.

34.    U.S. agencies, in their actions abroad and at home, likewise must work to protect listed foreign species. Section 2(c) of the ESA explicitly states that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of [the conservation of endangered species and threatened species]."

35.    Moreover, section 7 of the ESA requires that "[e]ach federal agency shall . . . insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2).

36.    Finally, the ESA establishes general prohibitions that apply to all endangered wildlife. These protections make it illegal for any person subject to the jurisdiction of the United States to "take" (includes harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or to attempt any of these); import or export; deliver, receive, carry, transport, or ship in interstate or foreign commerce in the course of commercial activity; or sell or offer for sale in interstate or foreign commerce any endangered wildlife

species. It also is illegal to possess, sell, deliver, carry, transport, or ship any such wildlife that has been taken in violation of the ESA. 16 U.S.C. § 1538.

37.    Each of these ESA protections and benefits are currently unavailable to the ten penguin species that are the subject of this Complaint because only those species formally listed receive such protections. See 50 C.F.R. § 402.12(d).

38.    It is critical that the Secretary scrupulously follow the ESA's listing procedures and deadlines if species are to be protected in a timely manner, because the ESA does not protect a species until the species is formally listed as threatened or endangered.

## V. FACTUAL BACKGROUND

### A. Penguins Are Among the Most Threatened Groups of Birds in the World

39.    Penguins are widely distributed throughout the southern hemisphere and are among the more threatened groups of birds in the world, with over half of the approximately 19 currently recognized species considered imperiled by the World Conservation Union ("IUCN") and BirdLife International. Nevertheless, only one species of penguin, the Galápagos Penguin (*Spheniscus mendiculus*), is actually protected under the ESA. See 35 Fed. Reg. 8491 (June 2, 1970) (Final rule listing Galápagos Penguin as Endangered).

40.    Accordingly, the Center prepared a detailed scientific petition for the world's most imperiled penguin species that qualify for listing under the ESA. Each of the petitioned penguin species faces unique and specific threats, ranging from introduced predators, disease, habitat destruction, disturbance at breeding colonies, oil spills, marine pollution, and in some cases, direct harvest. Additionally, most species are also impacted by fisheries, either directly, such as when individuals are caught and killed in trawls, nets and longlines, or indirectly, through the depletion of essential prey species such as krill. Cumulatively, these threats are for most of the petitioned species already of significant magnitude and impact such that listing under the ESA is warranted.

41.    Moreover, an additional overriding threat, affecting each species, makes listing under the ESA all the more urgent.  Global warming has already been linked to past, ongoing, and/or projected population declines in numerous species of penguins. Even under the most optimistic emission scenarios, continued warming over the next several decades will dramatically and irreversibly affect Antarctica, the Sub-Antarctic islands, the Southern Ocean, and the penguins dependant on these and adjoining ecosystems.  Global warming then represents the most significant and pervasive threat to the continued existence of penguins, and absent prompt action to cut United States and global greenhouse gas emissions, the march of the penguins will be a march towards extinction.

**B. The Ten Penguin Species at Issue in this Lawsuit**

42.    The Emperor Penguin is the largest of the world's penguin species, standing almost four feet tall and weighing 70 to 90 pounds. It has a gray back, white belly, and orange markings behind its eyes and at the top of its chest.  This penguin is the most ice-adapted of any penguin species, inhabiting pack ice and surrounding marine areas.  The emperor penguin ranges throughout coastal Antarctica and may be seen up to 56 miles inland during the breeding season. Emperor penguins primarily eat crustaceans such as krill, but they will also occasionally take small fish and squid.  Emperor penguins are seriously threatened by global warming, which causes profound changes in the Antarctic ecosystem and impacts them in diverse ways, such as reducing populations of prey species and causing ice shelves to collapse and icebergs to calve. These penguins are also threatened by industrial fisheries which further reduce prey availability.  While global population trends have not been quantified, large declines in some populations have been documented.  The emperor colony at Pointe Geologie, featured in the movie March of the Penguins, has declined over 50 percent since the 1960s, largely due to warming waters and changing currents resulting in reduced abundance of prey.

43.    The African Penguin breeds on the African mainland from Hollams Bird Island, Namibia to Bird Island, Algoa Bay, South Africa. The species formerly bred at many additional sites but has been extirpated from much of its range. African penguins feed on pelagic schooling fish, particularly sardine and anchovy. Global-warming-induced shifts in the marine and atmospheric environment are destructive to the African penguin's habitat and comprise a major threat to the bird. Other severe threats the species faces include guano and egg collection at breeding colonies, oil pollution, and commercial fishing. African penguin populations have been reduced by approximately 90 percent since the beginning of the 20th century. In 1910, there were probably approximately 1.4 million adult birds in one population alone at Dassen Island, which had been reduced to about 145,000 birds by the mid-1950s. The worldwide population was estimated at 179,000 birds in the late 1990s and is still declining.

44.    The Erect-crested Penguin breeds only on New Zealand's Bounty and Antipodes island systems. Erect-crested Penguins inhabit pack ice and surrounding marine areas. Erect-crested penguins dine primarily on krill and squid, with some small fish included in the diet. This species' significant declines are attributed to major global-warming-induced changes in the marine environment that have reduced overall productivity and penguin prey. This penguin is also threatened by competition with and bycatch by commercial fisheries, nonnative predators, disease, disturbance, oil spills, and pollution. The Erect-crested Penguin has experienced rapid past and current decline. In 1978, researchers estimated that the Bounty Islands and Antipodes Islands each contained 115,000 pairs. In 1995, ground surveys on Antipodes Island indicated that only 49,000 to 57,000 pairs remained — a decline of roughly 50 percent in 20 years, with further losses sustained since. Even worse, a survey in 1997 and 1998 revealed just 28,000 breeding pairs on the Bounty Islands, about a 75 percent decrease since 1978. A small population on Campbell Island numbered 20 to 30 pairs in 1986 and 1987, but is now most likely extirpated.

45.    The Fiordland Crested Penguin occupies the west and south coasts of New Zealand's South Island, on Stewart Island, and on several adjacent offshore islands. This species feeds on fish, squid, octopus, and krill. Leading threats to this penguin include global warming, industrial fisheries that degrade prey abundance and kill birds through bycatch, and invasive predator species. Early exploitation by Europeans and predation by introduced predators extirpated this species from much of its range throughout New Zealand. Based on a series of surveys conducted in the 1990s, the population is estimated at only 2,500 to 3,000 breeding pairs, and severe population declines have been recently observed.

46.    The Humboldt Penguin lives along the coasts of Chile and Peru in the southeastern Pacific Ocean. Humboldt Penguins feed primarily on fish, especially anchovies, herring, and smelt. Humboldt Penguin populations were first devastated by the mining of guano deposits — in which the species prefers to nest — for fertilizer. Through the mid-20th century, the penguin appeared to be recovering from this early threat. But changes in ocean currents and temperatures in the Pacific Ocean, apparently driven by global warming, appear to be a grave threat to the species' survival. This penguin is also imperiled by intense commercial fishing and oil pollution. While there were more than a million Humboldt penguins in the mid-19th century, a 1998 population and viability analysis indicated that extinction was likely within 100 years. The 1982-83 El Niño reduced the population from approximately 20,000 to around 5,500 individuals as a result of reproductive failure and starvation of adults. By 1996, populations had recovered slightly to 10,000 to 12,000, but the 1997-98 El Niño decimated the population once more, leaving only 3,300 Humboldt penguins in existence.

47.    Macaroni Penguins range from the sub-Antarctic to the Antarctic Peninsula. They breed in at least 216 colonies at 50 sites, including southern Chile, the Falkland Islands, South Georgia and the South Sandwich islands, the South Orkney and South Shetland Islands, Bouvet Island, the Prince Edward and Marion islands, the Crozet

Islands, the Kerguelen Islands, the Heard and McDonald Islands, and very locally on the Antarctic Peninsula. While foraging, groups will range north to the islands off Australia, New Zealand, southern Brazil, Tristan da Cunha, and South Africa. This penguin feeds mainly on krill, but will also eat other crustaceans, small fish, and squid. Rising sea-surface temperatures as a result of global warming are expected to threaten the Macaroni Penguin's food supply by causing a decrease in prey abundance and driving prey further away from coastal areas and penguin breeding colonies. Macaroni Penguins are also threatened by fisheries interactions and oil pollution. Despite population estimates of more than 11 million birds, Macaroni Penguins have experienced an estimated decline of at least 30 percent. Declines of 50 to 65 percent in many populations have been documented in the last 30 years.

48.    The Southern Rockhopper penguin breeds on the Falkland Islands and in southern Chile and southern Argentina, on Prince Edward Island and the Marion Islands in South Africa, the Crozet Islands and Kerguelen Islands in the French Southern Territories, Australia's Heard and Macquarie islands, and the Antipodes Islands and Campbell and Auckland islands in New Zealand. The Northern Rockhopper penguin breeds on Gough Island and Tristan da Cunha in the southern Atlantic Ocean and the St. Paul Islands in the southern Indian Ocean. Rockhoppers primarily eat krill, but will also eat other crustaceans as well as squid. Researchers conclude that the declines observed in Southern and Northern Rockhopper Penguin populations are a result of reduced prey abundance caused by global warming. In addition, these penguins suffer from the effects of overfishing and oil pollution. Although the world population of all Rockhopper Penguins is currently estimated at around 1.5 million pairs, the population has decreased by several million pairs since the early part of the 20th century, and it is estimated to have decreased by 30 percent in the past 30 years.

49.    The White-flippered Penguin is endemic to Canterbury, New Zealand, breeding in significant numbers only on Banks Peninsula and Motunau Island. This

species feeds on small shoaling fish such as pilchards and anchovies or cephalopods, and less often on crustaceans. Prey is caught by pursuit diving. The key land-based threats to this penguin continue to be predation by introduced predators and habitat degradation by human activities. At sea, White-flippered Penguins have been frequently caught in nearshore set nets, especially around Motunau Island. A large oil spill would be disastrous to this penguin, and the threat is high because the birds nest in areas near shipping lanes. Like all penguins, this bird is also severely threatened by global warming, which reduces prey availability. White-flippered Penguins have disappeared from much of their range since European settlement, and are in much-reduced numbers where they have survived. At the time of European settlement, the Banks Peninsula would have had tens of thousands of penguins, but settlement destroyed habitat and predators have overrun many of the remaining colonies. In one study, the aggregate number of nests declined from 489 to 85 between 1981 and 2000 — an overall loss of 83 percent. The most recent estimate of the total population is only 2,200 pairs.

50.     The Yellow-eyed Penguin is endemic to New Zealand, inhabiting the southeast coast of the South Island, Foveaux Strait, and Stewart, Auckland, and Campbell islands. The Yellow-eyed Penguin feeds primarily on red cod, opal fish, sprat, and squid. Yellow-eyed penguins are seriously threatened by food shortages resulting from sea-temperature changes driven by global warming. Populations have also suffered from loss of natural breeding habitat, high chick mortality due to predation by introduced mammals, and gillnet entanglement. This species has declined by well over 50 percent in recent decades and now numbers fewer than 2,000 breeding pairs.

**C. Procedural History**

51.     On November 28, 2006 the Center submitted to the Secretary a detailed 125-page scientific Petition to list twelve of the world's penguin species as threatened or endangered pursuant to Section 4 of the ESA. The 12 species included in the Petition were the Emperor Penguin, Southern Rockhopper Penguin, Northern Rockhopper

Penguin, Fiordland Crested Penguin, Snares Crested Penguin, Erect-crested Penguin, Macaroni Penguin, Royal Penguin, White-flippered Penguin, Yellow-eyed Penguin, African Penguin, and Humboldt Penguin.

52.     The Secretary received the Petition on November 29, 2006.  On July 11, 2007, the Secretary published in the Federal Register a positive 90-day finding for ten of the petitioned penguin species.  72 Fed. Reg. 37695-37697 (Notice of 90-Day Finding on a Petition to List 12 Penguin Species as Threatened or Endangered under the Endangered Species Act) (July 11, 2007).  In the 90-day finding, the Secretary found that the Petition presented substantial information showing that listing of the ten penguin species may be warranted under the Endangered Species Act, initiated a status review for these species, and solicited public comment for a period of 60 days.  Id. The positive 90-day finding was for the Emperor Penguin, Southern Rockhopper Penguin, Northern Rockhopper Penguin, Fiordland Crested Penguin, Erect-crested Penguin, Macaroni Penguin, White-flippered Penguin, Yellow-eyed Penguin, African Penguin, and Humboldt Penguin. Id. The Secretary made a negative 90-day finding for the Royal and Snares Crested Penguins. Id.

53.     A 12-month finding for the ten penguin species for which the Secretary made a positive 90-day finding was due on November 29, 2006.  The Secretary failed to issue the 12-month finding for these species by this date, and has still not done so.  The ten penguin species will not receive the protections they need and are legally entitled to under the ESA until the Secretary makes all of the required findings and completes the listing process.

## VI. CLAIM FOR RELIEF

### (Violation of Endangered Species Act, 16 U.S.C. § 1533(b), for Failure to Make a 12-month Finding on the Listing Petition)

54.     The Center realleges and incorporates by reference all the allegations set forth in this Complaint, as though fully set forth below.

55.    The Secretary's failure to make a 12-month finding on the Emperor Penguin, Southern Rockhopper Penguin, Northern Rockhopper Penguin, Fiordland Crested Penguin, Erect-crested Penguin, Macaroni Penguin, White-flippered Penguin, Yellow-eyed Penguin, African Penguin, and Humboldt Penguin within one year of receipt of the Center's Petition to list these species under the ESA is a violation of the ESA and its implementing regulations.   16 U.S.C. § 1533(b)(3)(B); § 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the Administrative Procedures Act, 5 U.S.C. § 706(2).

## VII.    PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully requests that the Court grant the following relief.

1.    Declare that the Secretary is in violation of his non-discretionary duties under 16 U.S.C. § 1533(b)(3)(A) of the ESA for failing to make a 12-month finding on the Emperor Penguin, Southern Rockhopper Penguin, Northern Rockhopper Penguin, Fiordland Crested Penguin, Erect-crested Penguin, Macaroni Penguin, White-flippered Penguin, Yellow-eyed Penguin, African Penguin, and Humboldt Penguin within one year of receipt of the Center's Petition to list these species under the ESA;

2.    Issue permanent injunctive relief compelling the Secretary to make and publish in the Federal Register a 12-month finding on the Petition to list the Emperor Penguin, Southern Rockhopper Penguin, Northern Rockhopper Penguin, Fiordland Crested Penguin, Erect-crested Penguin, Macaroni Penguin, White-flippered Penguin, Yellow-eyed Penguin, African Penguin, and Humboldt Penguin under the ESA by a date certain;

3.    Award Plaintiffs their costs of litigation, including reasonable attorneys fees; and

4.    Grant Plaintiffs such other relief as the Court deems just and proper.

DATED: February 27, 2007.

Respectfully submitted,

Michael Senatore (DC Bar # 453116)
Center for Biological Diversity
1601 Connecticut Avenue, N.W., Suite 701
Washington, D.C.  20009
202-232-1216 (phone)
202-232-1217 (fax)
msenatore@biologicaldiversity.org

Attorney for Plaintiff

08-335
RMU

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

CENTER FOR BIOLOGICAL DIVERSITY, a nonprofit corporation,
1333 N. Oracle Rd.
Tucson, AZ 85705                                    88888

88888

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**DEFENDANTS**

H. Dale Hall, Director, U.S. Fish and Wildlife Service, 1849 C Street, N.W., Room 3256,
MailStop 3238 MIB, Washington, D.C. 20240-0001
Dirk Kempthorne, United States Secretary of the Interior, 1849 C Street, N.W.,
Washington, D.C. 20240

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Michael Senatore (DC Bar # 453116)
Center for Biological Diversity
1601 Connecticut Avenue, N.W., Suite 701
Washington, D.C. 20009
202-232-1216 (phone)
msenatore@biologicaldiversity.org

Case: 1:08-cv-00335
Assigned To : Urbina, Ricardo M.
Assign. Date : 2/27/2008
Description: Admd. Agency Review

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/**
**Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C. Administrative Agency**
**Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

○ **D. Temporary Restraining**
**Order/Preliminary**
**Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**        OR        ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act)

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violation of the Endangered Species Act for Failure to Make a 12-Month Finding for Ten Penguin Species, 16 U.S.C. Sec. 1540.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  2/27/08     SIGNATURE OF ATTORNEY OF RECORD  _____

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.